UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

RAYMOND LEWIS,

                                        Plaintiff,

                                                        9:16-CV-00804
v.                                                      (MAD/TWD)

J. HANSON, et al.,

                                        Defendants.

———————————————————————————

APPEARANCES:                                    OF COUNSEL:

RAYMOND LEWIS
11-A-4997
Plaintiff, *pro se*
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN                        HELENA O. PEDERSON, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

### I.      INTRODUCTION

This prisoner civil rights action, commenced on July 5, 2016, pursuant to 42 U.S.C. §

1983, has been referred to me for Report and Recommendation by the Honorable Mae A.

D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Raymond Lewis ("Plaintiff"), who commenced this action *pro se*, alleges in his

complaint that Defendants Sergeant Hanson ("Sgt. Hanson"), Corrections Officers Sharpe ("C.O.

Sharpe"), Mere ("C.O. Mere"), Peck ("C.O. Peck"), and John Doe #1 and #2, two unknown officers, assaulted him in violation of the Eighth Amendment. (Dkt. No. 1.) As a result, Plaintiff suffered a collapsed lung and several fractured ribs. *Id*. at 7. Plaintiff further alleges that the assault was in retaliation for having filed a prior lawsuit against another officer. *Id*. Plaintiff's claims for violation of his First and Eighth Amendment rights survived initial review. (Dkt. No. 9 at 14.[1])

Presently before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 22.) Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to commencing this action, and therefore, the action must be dismissed. (Dkt. Nos. 19 and 22.) Plaintiff has opposed the motion. (Dkt. No. 21.) For the reasons that follow, the Court recommends that Defendants' motion to dismiss be granted without prejudice.

## II.    FACTUAL BACKGROUND

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Although Plaintiff is presently confined at Clinton Correctional Facility, the assault took place when Plaintiff was housed in Bare Hill Correctional Facility ("Bare Hill"). (Dkt. No. 1.) On April 23, 2016, at approximately 3:20 P.M., Sgt. Hanson and two unknown officers entered Plaintiff's cell and directed him to get dressed. *Id*. at 7.[2] Plaintiff was then escorted to the foyer of the dorm where he was told to put his hands on the wall. *Id*. One of the officers proceeded to

---

[1] Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system.

[2] These officers are identified in the complaint as "Doe #1" and "Doe #2". (Dkt. No. 1 at 3.)

pat-frisk him.  *Id*.  Following the pat-frisk, Sgt. Hanson informed the officers to handcuff

Plaintiff and lead him outside.  *Id*.  Plaintiff was led into a van where he was told to lie on his

stomach.  *Id*.  When Plaintiff asked the officers why he had been led into the van, the officer who

pat-frisked him replied, "Our buddy wants us to give a nigger like you the special treatment."  *Id*.

at 8.  Plaintiff claims that one of the officers "stomp me 4 times in my back on the right side, and

then turn me over to my right side and started punching me in my side as hard as he could for

approximately 5 minutes."  *Id*.  The assault stopped when the van arrived at the special housing

unit ("SHU"); Plaintiff was led into a room and told to face the wall.  *Id.*

      Plaintiff further alleges that Sgt. Hanson and C.O. Sharpe entered the room and that Sgt.

Hanson stated, "This nigger gets the special treatment because he filed a lawsuit against one of

our brothers" and then struck Plaintiff in the head.  *Id*.  Sgt. Hanson, C.O. Sharpe, C.O. Mere and

others joined in and started kicking and punching Plaintiff's right side for approximately ten

minutes while he lay on the floor.  *Id*.  Plaintiff alleges that Sgt. Hanson told the other officers to

place Plaintiff on suicide watch because Plaintiff seemed to want to hurt himself.  *Id*. at 9.

Plaintiff was then taken to a cell where Sgt. Hanson walked in, grabbed Plaintiff by the neck and

stated, "If he hear anything about this, all this can happen again."  *Id*.

      On April 25, 2016, Plaintiff was taken to an outside hospital after finding that he was

having difficulty breathing.  *Id*.  There, Plaintiff was informed that he had a collapsed lung and

three to four fractured ribs on his right side.  *Id*.  On April 28, 2016, Plaintiff received five

misbehaviour reports regarding the incident.  *Id*.  Plaintiff claims the misbehaviour reports were

written to "try and cover up the assault and explain how I received my injuries."  *Id.*  Special

Investigator Michael Germano was assigned to Plaintiff's case due to the serious nature of

Plaintiff's injuries.  *Id*.  At the conclusion of a Tier III disciplinary hearing, Plaintiff was found

not guilty on all three charges placed against him by Sgt. Hanson and the tickets written by C.O. Mere and C.O. Peck were "reversed." *Id.* Plaintiff was found guilty on charges that he assaulted C.O. Sharpe and other rule violations; Plaintiff was sentenced to ninety days SHU confinement and loss of privileges, as well as three months recommended loss of good time. *Id.* at 10. Plaintiff claims he did not receive a fair hearing and appealed the disciplinary determination. *Id.*

## III.    APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.    The Prison Litigation Reform Act of 1996**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable civil rights claim. *Jones*, 549 U.S. at 211-17. "[This] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id*. at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id*. at 215-16.

Because failure to exhaust is an affirmative defense, the defendant bears the burden of showing by a preponderance of the evidence that the plaintiff has failed to exhaust administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4

(N.D.N.Y. Mar. 31, 2010*); Bailey v. Fortier*, No. 9:09-CV-0742 (GLS/DEP), 2012 WL

6935254, at *6 (N.D.N.Y. Oct. 4, 2012) (the party asserting failure to exhaust bears the burden

of proving its elements by a preponderance of the evidence).

　　　In order to properly exhaust administrative remedies under the PLRA, inmates are

required to complete the administrative review process in accordance with the rules applicable to

the particular institution to which they are confined.  *Id*. at 218 (citing *Woodford v. Ngo*, 548

U.S. 81, 88 (2006)).  In New York State prisons, DOCCS has a well-established three-step

Inmate Grievance Program ("IGP").  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

　　　Generally, the DOCCS "IGP" involves the following procedure for the filing of

grievances.  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one

calendar days of the alleged occurrence.  *Id*. § 701.5(a).  A representative of the facility's inmate

grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the

grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal

resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the

grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the

conclusion of the hearing.  *Id*. § 701.5(b)(3).

　　　Second, a grievant may appeal the IGRC decision to the facility's superintendent within

seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the

grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the

superintendent must issue a written decision within twenty calendar days of receipt of the

grievant's appeal.  *Id*. § 701.5(c)(3)(ii).  Grievances regarding DOCCS-wide policy issues are

forwarded directly to the central office review committee ("CORC") for a decision under the

process applicable to the third step.  *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

Grievances claiming employee harassment "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent.[3] N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8 (2013). The superintendent is required to initiate an in-house investigation by higher ranking supervisory personnel; request an investigation by the inspector general's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. *Id*. § 701.8(d). A grievance referred to the superintendent and determined to be an allegation of harassment, may not be withdrawn and must be addressed by the superintendent. *Id*. § 701.8(d). The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g).

If a prisoner has failed to properly follow each of the applicable steps, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies and is barred from commencing a federal lawsuit. *Woodford*, 548 U.S. at 93. Receiving a decision from CORC *after* filing a federal lawsuit does not satisfy the

---

[3] Section 701.8 has been found applicable to claims of excessive force. *See, e.g.*, *Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009).

PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord*, 1267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

A prisoner's failure to exhaust may nonetheless be excused if administrative remedies were not "available" to him. *Ross v. Blake,* ___ *U.S.*___, 136 S. Ct. 1850, 1858 (2016). As the Supreme Court recently clarified, "[a]n inmate. . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858. To guide courts in this analysis, the Supreme Court identified "three kinds of circumstances" in which an administrative remedy, "although officially on the books," is not "available." *Id.* at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Whether a plaintiff has exhausted his administrative remedies is a question of law to be decided by the court. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).

## IV.    ANALYSIS

Plaintiff does not claim that administrative remedies were unavailable to him. (Dkt. No. 21 at 1.) Rather, he contends that because CORC failed to render a decision on his appeal within

the period required under the IGP, his administrative remedies have been exhausted despite the fact that his grievance was still pending at the time he commenced this action.  *Id.*

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed.  *See Kearney v. Gebo*, No. 9:15-CV-253, 2017 WL 61951, *2 (N.D.N.Y. Jan. 23, 2017).  Here, it is clear from the face of Plaintiff's complaint that he failed to exhaust administrative remedies.  Plaintiff admits in his complaint that he filed a grievance against the officers who assaulted him, and that the grievance was still pending at the time he brought suit.  (Dkt. No. 1 at 4.)  Therefore, Plaintiff failed to exhaust his administrative remedies before filing suit.[4]

Nonetheless, the Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit."  *Neal*, 267 F.3d at 123 (citing *Snider v Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)).

The parties have not provided information to the Court regarding if and when CORC issued a decision on Plaintiff's appeal.  If CORC issued a response to Plaintiff's grievance subsequent to the commencement of this action on July 5, 2016, the Court recommends that the complaint be dismissed without prejudice for failure to exhaust and that Plaintiff be granted leave to refile his complaint.  If CORC has not as yet issued a response, the Court recommends

---

[4] In his response to Defendants' motion, Plaintiff argues that he has exhausted his administrative remedies because CORC failed to issue a timely decision on his appeal.  (Dkt. No. 21 at 1.)  District Courts in the Second Circuit have generally determined that complete exhaustion is required even when CORC does not issue a timely decision but that dismissal for failure to exhaust should be without prejudice to allow an inmate to refile the complaint after CORC renders its decision.  *See Fuentes v Furco*, No. 13-CV-6846 (AJN), 2014 WL 4792110 (S.D.N.Y. Sept. 25, 2014).

that the complaint be dismissed without prejudice and further recommends that CORC be directed to render a decision on Plaintiff's pending grievance appeal within thirty days of the filing of the District Court's Decision and Order on this Report-Recommendation, and that upon CORC's failure to do so, Plaintiff's administrative remedies be deemed unavailable to him and he be allowed to refile this action indicating such.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's complaint (Dkt. No. 19) in this action be **GRANTED**, and that the Complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**, based upon Plaintiff's failure to fully exhaust his administrative remedies, and it is further

**RECOMMENDED** that: (1) in the event CORC has rendered a decision on Plaintiff's appeal, Plaintiff be granted leave to refile this suit within thirty days of the filing of a Decision and Order by the District Court on this Court's Report-Recommendation; and (2) in the event CORC has not rendered a decision on Plaintiff's appeal, that CORC be directed to render a decision on the appeal of Plaintiff's pending grievance within thirty days of the filing of the District Court's Decision and Order on this Report-Recommendation, and that Plaintiff be allowed to refile this suit within thirty days of the rendering of a decision by CORC; and (3) if Plaintiff does not receive a decision from CORC within thirty days of the filing of the District Court's Decision and Order on this Report-Recommendation, administrative remedies be deemed unavailable to him and he be allowed to refile this action indicating such within thirty days thereafter; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July13, 2017
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 6935254
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
|
Oct. 4, 2012.

**Attorneys and Law Firms**

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens* [1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his

complaint be dismissed on this procedural basis, without addressing its merits.

**I. *BACKGROUND***
Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84. [2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face. [3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

**\*2** The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.; see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution

of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint. [4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances. [5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit

team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor. [6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

**\*3** Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being

met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [7] *Id.*

## II. *PROCEDURAL HISTORY*
Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Officer M. Fortier as the sole named defendant, and alleges that she violated his constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

**\*4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[8], [9]

## III. *DISCUSSION*

### A. *Governing Legal Principles*
The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007).* "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

**\*5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,*

495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must next determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements. [10], [11] *Id.*

B. *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill.*

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R. R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

*6 Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at * 4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* ....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

C. *Application of Governing Legal Principles*

1. *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion

analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

#### 2. *Presentation of Defense/Estoppel*

**\*7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' " *Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at \*3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at \*5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at \*4 (citing *Bennett v. James,* 737 F.Supp.2d

219, 226 (S.D.N.Y.2010), *aff'd,* 441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at \* 3 . Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

#### 3. *Special Circumstances*

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at \*10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at \*10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at \*6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from

relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

 **\*8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

IV. *SUMMARY AND RECOMMENDATION*

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6935254

---

Footnotes

1    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2    The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. _____".

3    According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

4    Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

5    Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. *See* Tr. 34, 43.

6    Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

7    During the hearing Bailey testified that he did not recall Darrah visiting him. *See* Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

8    The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. *See Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. *See* Tr. 3.

2012 WL 6935254

9   Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

10  In *Macias,* which, like this action, involved an Eighth Amendment claim under *Bivens,* as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.,* defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44–45. The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

11  In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

---

**End of Document**                     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4792110
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Robert FUENTES, Plaintiff,
v.
B. FURCO and Dana Gage, Defendants.

No. 13–CV–6846.
|
Signed Sept. 25, 2014.

*MEMORANDUM AND ORDER*

ALISON J. NATHAN, District Judge.

**\*1** Before the Court is Defendants' motion to dismiss Plaintiff's Complaint on the grounds that (1) Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA") and (2) Plaintiff has failed to state a claim upon which relief can be granted. For the reasons stated herein, the motion is GRANTED and the claims are dismissed without prejudice on the limited ground of exhaustion.

## I. BACKGROUND

Plaintiff is a 65–year–old inmate in the custody of the New York State Department of Corrections and Community Supervision at Sing Sing Correctional Facility ("Sing Sing"). Compl. at 2. He alleges a violation of his constitutional rights stemming from the alleged deliberate indifference to his medical needs on the part of Sing Sing medical personnel.

On June 11, 2013, Plaintiff filed a complaint pursuant to the Inmate Grievance Program. Hale Decl. ¶ 8, Ex. B. The grievance was denied and Plaintiff appealed to the Superintendent, who appears to have denied the grievance on July 29, 2013. Dkt. No. 2 at 18; Hale Decl. ¶ 8, Ex. B. Plaintiff then appealed the Superintendent's denial on or about August 1, 2013, and the appeal was received by the clerk of the Central Office Review Committee on or about August 20, 2013. Hale Decl. ¶ 9, Ex. C. Plaintiff appears to have prepared and possibly mailed his Complaint to this Court on or about September 17, 2013. Dkt. No. 2 at 5. The pro se office of this Court received Plaintiff's

Complaint on September 23, 2013, and the Complaint was filed with this Court on the same day. Dkt. No. 2 at 1.

## II. LEGAL STANDARD

Where a defendant asserts nonexhaustion of administrative remedies as a defense, a court must consider whether the motion should be decided via a Rule 12(b)(6) motion for failure to state a claim or a Rule 56 motion for summary judgment. "If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) (Chin, J.). On the other hand, "[i]f nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 56[ ], to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *Id.* (citing *Torrence v. Pesanti,* 239 F.Supp.2d 230, 233–34 (D.Conn.2003)). Read together, Rules 12 and 56 suggest that "if a district court considers matters outside of the pleadings, it must then convert a motion under Rule 12(b)(6) to one for summary judgment and ensure that the opposing party is given proper notice of the conversion." *Id.* (citing *Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 521 (2d Cir.1986)).

**\*2** Here, conversion of Defendant's motion to dismiss to one for summary judgment is proper because both parties submitted and referenced documents outside of the pleadings relating to the very narrow issue of exhaustion. *See, e.g., Bennett v. Wesley,* No. 11 Civ. 8715(JMF), 2013 U.S. Dist. LEXIS 61133, at \*7, 2013 WL 1798001 (S.D.N.Y. Apr. 29, 2013). Moreover, pursuant to Local Rule 12.1, Defendants provided Plaintiff with notice, Dkt. No. 19, that the Court might treat Defendants' motion to dismiss pursuant to Rule 12(b)(6) as a motion for summary judgment. *See, e.g., id.* (citing *Hernandez v. Coffey,* 582 F.3d 303, 308 n. 2 (2d Cir.2009) (citing cases finding that a Local Rule 12.1 Notice provides sufficient notice to *pro se* parties)).

Summary judgment shall be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, a court views all evidence in the light most favorable to the non-movant, *Overton v. NY. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004), and "resolve[s] all ambiguities and drCir. Ct. ()aw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir.2004).

## III. DISCUSSION

The PLRA contains an exhaustion of remedies requirement, which provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) "*requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court at *all.*" *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (citation omitted, emphasis in original), *overruled on other grounds, Porter v. Nussle,* 534 U.S. 516, 523, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Failure to exhaust administrative remedies prior to filing suit in federal court is an absolute bar to this court's adjudication of Plaintiff's claims—"Subsequent exhaustion after suit is filed [ ] is insufficient." *Neal,* 267 F.3d at 122.

The Court must therefore determine whether Plaintiff exhausted his administrative remedies before bringing this suit, which requires examining the administrative remedies created by the relevant institution. *Jones v. Bock,* 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2d Cir.2007). Here, those remedies are set forth in Title 7 of New York's Codes, Rules and Regulations (N.Y.C.R.R.), which creates a three-step internal complaint process known as the Inmate Grievance Program ("IGP"). *Torres v. Carry,* 672 F.Supp.2d 338, 343 (S.D.N.Y.2009); *see also Garcia v. Heath,* No. 12 Cv. 4695, 2013 U.S. Dist. LEXIS 90480, at *10–11, 2013 WL 3237445 (S.D.N.Y. June 25, 2013). First, the inmate must file a complaint within 21 days of an alleged occurrence to the Inmate Grievance Review Committee ("IGRC"). 7 N .Y.C.R.R. § 701.5(a). The IGRC then reviews the grievance and makes a formal or informal determination. § 701.5(b). If the inmate wants to appeal the IGRC's determination, he must appeal to

the superintended by submitting an appeal form to the grievance clerk within seven calendar days after receipt of the IGRC's written response. § 701.5(c). Finally, the third step in the process is an appeal to the Central Office Review Committee ("CORC"), which must be made within seven days after receipt of the superintendent's written response. § 701.5(d). "The CORC shall review each appeal, render a decision on the grievance, and transmit its decision ... within thirty (30) calendar days from the time the appeal was received." § 701.5(d)(3)(ii). Section 701.5 does not indicate what happens when the CORC fails to render a decision within 30 days of receiving a grievant's appeal.

**\*3** Documents supplied by both Plaintiff and Defendants indicate that Plaintiff timely completed the first two steps of the administrative review process and timely filed an appeal to the CORC, but that the CORC had not rendered a decision on his appeal at the time that Plaintiff filed his Complaint with this Court. *See* Hale Decl. at 2; Ex. B and C (Dkt. No. 18). As far as this Court is aware, the CORC still has not rendered a decision regarding Plaintiff's appeal, which was submitted to the CORC on or about August 1, 2013 and received by the CORC on or about August 20, 2013. Hale Decl. Ex. C (Dkt. No. 18 at 11). Plaintiff filed his Complaint commencing this lawsuit on September 23, 2013, Compl. at 1, which is 34 calendar days after the CORC received his appeal.

Thus, it is apparent that Plaintiff brought suit more than 30 calendar days after the CORC received his appeal, but before the CORC issued a response. What this means for Plaintiff's exhaustion of remedies is unclear, however, due to the IGP's silence as to the effect of the CORC's failure to issue a response within 30 days. This silence has created problems for federal courts applying the PLRA. *See, e.g., Couvertier v. Jackson,* No. 9:12–CV–1282 (GLS/DEP), 2014 U.S. Dist. LEXIS 85873, at *12 (N.D.N.Y. May 22, 2014) (noting "[t]he IGP provides no mechanism for enforcing the requirement that the CORC issue a decision in thirty days"); *see also Peoples v. Fischer,* No. 11 Civ. 2694(SAS), 2012 U.S. Dist. LEXIS 62428, at *15–20 , n. 125, 2012 WL 1575302 (S.D.N.Y. May 3, 2012) (analyzing the effect of the CORC's failure to timely respond to an appeal). And there is no clear answer as to how a court should proceed under the PLRA when it appears that an inmate plaintiff has followed all the requirements of his institution's administrative procedures, but the final review panel is delinquent in its response to his appeal. On

the one hand, an inmate plaintiff should not be penalized for his institution's failure to follow its own administrative procedures. *Peoples,* 2012 U.S. Dist. LEXIS 62428, at 33 n. 125, 2012 WL 1575302. On the other hand, in light of the PLRA's purpose, a court should hesitate to decide the underlying action before according the CORC the first opportunity to do so.

The Second Circuit has not addressed this issue, but district courts in the Circuit have fashioned solutions that attempt to balance the PLRA's goal of allowing institutions the first opportunity to address an inmate's grievances against the inmate's right to a federal forum when he has complied with all of the procedural formalities expected of him. In such circumstances, it appears that Courts tend to hold that a CORC response is required for exhaustion to be satisfied, but that a motion to dismiss or for summary judgment should be granted without prejudice to allow the inmate plaintiff to refile his complaint once the CORC responds to his appeal. *See, e.g., Rambert v. Mulkins,* No. 11 Civ. 7421(KPF), 2014 U.S. Dist. LEXIS 74091, at *46–48, 2014 WL 2440747 (S.D.N.Y. May 30, 2014); *Bennett,* 2013 U.S. Dist. LEXIS 61133, at *17–18, 2013 WL 1798001 (S.D.N.Y. Apr. 29, 2013); *Torres,* 672 F.Supp.2d at 345–46; *McCoy,* 255 F.Supp.2d at 245–251. [1]

 **\*4** The Court follows that approach here and GRANTS the motion for summary judgment and dismisses the claims without prejudice. Summary judgment is based on the very narrow issue of exhaustion of administrative remedies. This approach is consistent with the principle that "failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." *Neal,* 267 F.3d at 123 (quoting *Snider v. Melindez,* 199 F.3d 108, 111–12 (2d Cir.1999)). The Court further holds that if no CORC decision is rendered within 30 days from the date of this Order, Plaintiff may re-file his complaint with this Court, which will re-open the case and, upon reopening, will "deem administrative remedies to be unavailable such that [Plaintiff] may proceed with his claim." *Torres,* 672 F.Supp.2d at 345–46.

Because the Court is granting the motion based on failure to exhaust administrative remedies, it need not consider Defendants' alternative arguments that Plaintiff failed to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is GRANTED and the claims are dismissed without prejudice. In light of the Court's resolution of the motion to dismiss, Plaintiff's application for pro bono counsel is DENIED as moot. This resolves Dkt. Nos. 16 and 23. The Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4792110

---

Footnotes

1    In a thorough and well-reasoned opinion, then-district Judge Chin analyzed the procedural peculiarity that necessitates a grant of summary judgment without prejudice in the context of a failure to exhaust administrative remedies under the PLRA when the failure to exhaust is not apparent from the face of the complaint. *McCoy,* 255 F.Supp.2d at 245–251. The Court agrees with his analysis.

---

End of Document          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification
Appeal Filed by KEARNEY v. NYS DOCCS, 2nd Cir., January 23, 2017

2017 WL 61951
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard Kearney, Plaintiff,
v.
D. Gebo, Correctional Officer, Great Meadow
Correctional Facility; M. Ross, Correctional
Officer, Great Meadow Correctional Facility;
and Rae, Sgt., Coxsackie Correctional
Facility, formerly known as Roe, Defendants.

9:15-CV-253 (MAD/DJS)
|
Signed 01/04/2017

**Attorneys and Law Firms**

KINDLON SHANKS & ASSOCIATES, 74 Chapel
Street, OF COUNSEL: GENNARO D. CALABRESE,
ESQ., Albany, New York 12207, Attorneys for Plaintiff.

OFFICE OF THE NEW YORK STATE ATTORNEY
GENERAL, The Capitol, OF COUNSEL: COLLEEN
D. GALLIGAN, AAG, JUSTIN L. ENGEL, AAG,
Albany, New York 12224, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

**\*1** In his *pro se* complaint dated February 19, 2015,
Plaintiff asserts claims arising out of an incident which
occurred on March 9, 2012 at Coxsackie Correctional
Facility ("Coxsackie C.F."). *See* Dkt. No. 1 at 5-7.
Specifically, Plaintiff claimed that he was subjected to
excessive force, denied proper and adequate medical care,
denied due process and improperly disciplined, denied
Equal Protection, and retaliated against in violation of
his constitutional rights and in violation of the Americans
with Disabilities Act ("ADA"). In a May 20, 2015

Decision and Order, the Court dismissed all claims with
the exception of Plaintiff's excessive force and failure to
intervene claims against Defendants Gebo, Ross and Rae.
*See* Dkt. No. 7.

On September 19, 2016, the Court appointed Plaintiff
trial counsel and scheduled trial to commence on January
9, 2017. *See* Dkt. Nos. 53, 56. On December 5, 2016,
Defendants advised the Court of its intent to raise
Plaintiff's failure to exhaust administrative remedies
as an affirmative defense at trial. *See* Dkt. No. 61.
Thereafter, on December 8, 2016, Defendants requested
an exhaustion hearing prior to trial because Plaintiff is
not entitled to a jury trial on disputed factual issues
relating to his exhaustion of administrative remedies as
required by the Prison Litigation Reform Act ("PLRA").
*See* Dkt. No. 64. The Court granted Defendants' request
and scheduled an exhaustion hearing for January 3, 2017.
*See* Dkt. No. 65.

As set forth below, based on the parties' submissions and
the testimony and evidence presented at the exhaustion
hearing, the Court finds that Plaintiff failed to exhaust
his administrative remedies and that he has failed to
demonstrate unavailability. *See Messa v. Goord*, 652 F.3d
305, 308-10 (2d Cir. 2011).

**II. DISCUSSION**

**A. Exhaustion**
The Prison Litigation Reform Act ("PLRA") states that
"[n]o action shall be brought with respect to prison
conditions under section 1979 of the Revised Statutes of
the United States (42 U.S.C. 1983), or any other Federal
law, by a prisoner confined in any jail, prison, or other
correctional facility until such administrative remedies as
are available are exhausted." 42 U.S.C. § 1997e(a). This
exhaustion requirement applies to all suits brought by
inmates regarding aspects of prison life. *See Porter v.
Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all
available administrative remedies even if they are seeking
only money damages that are not available in prison
administrative proceedings. *Giano v. Goord*, 380 F.3d 670,
675 (2d Cir. 2004), *abrogated on other grounds by Ross v.
Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an
affirmative defense that must be raised by the defendants
and, as such, it is the defendants' burden to establish that
the plaintiff failed to meet the exhaustion requirements.

See *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

**\*2** The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may

be initially filed. *See, e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, \*5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, \*8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, ——U.S. —— 136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' " *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' " *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' " *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860). [1]

**B. Pre-hearing Submissions**

**\*3** In his pre-hearing submission, Plaintiff contends that he was not required to comply with the PLRA's exhaustion requirement because "his subjection to excessive force during a transfer was not a 'prison condition' under 42 USCS 1997e(a)." Dkt. No. 85 at 1. In his submission, Plaintiff presents the following facts in support of his argument:

> [O]n March 9, 2012, Plaintiff was transferred from Great Meadow Correctional Facility to Coxsackie

Correctional Facility via shuttle bus. When the shuttle bus arrived at Coxsackie Correctional Facility, Defendant Roe ordered Plaintiff off the bus and led him into the reception area. Without provocation or warning Plaintiff was struck and knocked to the ground. Defendants Gebo and Ross then physically assaulted Plaintiff while he was on the ground. Defendant Roe was present but failed to intervene and prevent the physical assault. The Plaintiff has alleged in his Complaint that the Defendants' actions were unrelated to the duties and responsibilities of their employment. The Plaintiff asserts in his Complaint that he was targeted for exercising constitutional rights. For the foregoing reason, the Plaintiff was not required to exhaust his administrative remedies. *See Gibson, 280 F.3d at 224; Neal v. Goord, 267 F.3d 116, 119-121 (2d Cir. 2001).*

Dkt. No. 85 at 1-2. Finally, Plaintiff asserts that it is his "position that compliance with the PLRA's exhaustion requirement was unnecessary because he grieved directly to the Inspector General's Office." *Id.* at 2.

### C. Exhaustion Hearing

On January 3, 2017, the Court held an exhaustion hearing. As its first witness, Defendants called Jeffrey Hale, the Assistant Director for DOCCS' Inmate Grievance Program. *See* Transcript of Exhaustion Hearing dated Jan. 3, 2017 ("Tr.") at 4-5. Mr. Hale, who has been in his position with DOCCS since March of 2010, testified that, as part of his responsibilities, he provides oversight for the IGP and ensures that it is operating according to DOCCS' directives and policies. *See id.* at 5. Moreover, Mr. Hale testified that he provides oversight of the inmate grievance programs run at the individual correctional facilities and responds to issues that may arise with these programs. *See id.*

Mr. Hale also discussed his understanding of the PLRA and the three-tiered IGP implemented by DOCCS. *See*

*id.* at 6-11. According to Mr. Hale, Directive 4040, which sets forth DOCCS' policy for inmate grievances, provides that complaints can be sent to the Inmate Grievance Resolution Committee ("IGRC") or the IGRC clerk at the facility at which the inmate is housed. *See id.* at 6. Further, complaints are not required to be submitted on the official form provided by the facilities. *See id.* at 6-7. Rather, the complaint "can be on a plain piece of paper, it can be on the back of an envelope, it can be on any form of anything that he can write on and send it to ... the Inmate Grievance Office." *Id.* Mr. Hale also testified about the procedural safeguards that are in place to assist inmates with filing grievances. *See id.* at 11-13. According to Hale, section 701.6 of Directive 4040 provides inmates with these safeguards, including, among other things, extensions of time for inmates physically unable to timely file a grievance and the ability to challenge the IGP supervisor's decision to return a grievance that was deemed untimely. *See id.* at 11-12. Further, Hale testified that in 2012, inmates housed in the Special Housing Unit ("SHU") were provided additional safeguards not provided to inmates in general population. *See id.* at 12. As set forth in section 701.7, the IGP supervisor or an IGP staff member is required to make weekly rounds in the SHU to handle any grievance issues. *See id.*

**\*4** Hale also testified that he provided oversight of the IGP at Coxsackie C.F. in March of 2012. *See* Tr. at 12-13. During that time, the IGP supervisor at Coxsackie C.F. provided Hale with monthly reports and had regular contact with his office. *See id.* Throughout 2012, the CORC regularly received grievance appeals from Coxsackie C.F. and Hale was unaware of any interruptions in the grievance process at the facility. *See id.* at 13.

At the request of the Attorney General's Office, Hale searched for an appeal to the CORC of any grievance filed by Plaintiff in connection with the alleged March 9, 2012 assault. *See id.* at 13-14. Hale testified that the CORC did not receive any such appeal. *See id.* at 14-15 (discussing his correspondence with the Attorney General's Office and the printout of the case search that was introduced into evidence). In his search, however, Hale learned that, prior to June of 2015, Plaintiff had exhausted his administrative remedies on eight separate occasions. *See id.* at 15-16.

During cross-examination, Hale acknowledged that the regulations indicate that IGP grievance forms are supposed to be available to inmates in the SHU. *See* Tr. at 19. Despite this requirement, Hale further reiterated that, although the forms are required to be made available in the SHU, grievances can be submitted on any type of paper if the standard form is not available. *See id.* Directive 4933 also mandates that inmates in the SHU be provided with certain supplies, including paper, writing utensils, and envelopes. *See id.* at 20. Also during cross-examination, Hale provided additional details regarding the grievance procedure for inmates in the SHU. *See id.* at 23-26. For example, to appeal to the CORC, when a SHU inmate receives a Superintendent's response, the inmate need only sign the response, indicate his or her intent to appeal, place it in an envelope, and return it to the Inmate Grievance Office. *See id.*

As their next witness, Defendants called Tisha Suprenant, who has been the Inmate Grievance Program Supervisor at Coxsackie C.F. since July of 2016. *See* Tr. at 29. As part of her responsibilities as the Inmate Grievance Program Supervisor, Suprenant testified that she maintains the grievance files for the current year, plus four years prior, as well as correspondence. *See id.* According to Suprenant, "[e]ach grievance that's submitted gets a grievance calendar number, it's logged on the clerk's log, the inmate is notified, he gets a receipt notifying him of what the title is, the code and that we've received his grievance. And then we—depending on what the title and code is, if the inmate is entitled to a grievance hearing or if it's a harassment grievance, it gets immediately forwarded to the Superintendent." *Id.* at 29-30.

In connection with this case, Suprenant searched the records in the Inmate Grievance Office for any grievances or correspondence filed by Plaintiff in 2012 and was unable to locate any such documents. *See id.* at 31. Moreover, Suprenant testified that she reviewed the log book at Coxsackie C.F. from March of 2012 and, while grievances were filed throughout the month by other inmates, none were filed by Plaintiff. *See id.* According to Suprenant, the log book demonstrates that the IGP at Coxsackie C.F. was operating in March 2012 because grievances were continuously filed by inmates (other than Plaintiff) and processed by her office. *See id.* at 31-32. This fact is further verified by the report created by the Inmate Grievance Program Supervisor serving in March of 2012. *See id.*

**\*5** Plaintiff was the only other witness to testify at the January 3, 2017 hearing. *See* Tr. at 35. Plaintiff described the alleged attack when he first arrived at Coxsackie C.F. on March 9, 2012 and the fact that he was then housed in the SHU for approximately twenty days. *See id.* at 36-38. According to Plaintiff, while he was housed in the SHU in March of 2012, he never received "inmate grievance complaint forms" from the area supervisor or any other staff. *See id.* at 41.[2] Further, Plaintiff claims that he was not initially provided envelopes and that he did not receive "material until [he] wrote [his] complaints to the IG—first the Superintendent, ... and the IG and the Commission." *Id.* Plaintiff also testified that he did not recall anyone from the IGP making rounds in the SHU. *See id.* Rather, Plaintiff claims that he was generally isolated and only occasionally saw a nurse who came to provide him with medication. *See id.*

During his testimony, Plaintiff also discussed complaints and letters he wrote to several entities regarding the alleged assault. *See id.* at 41-44. For example, Plaintiff wrote a complaint to the State Commission of Correction on March 21, 2012. *See id.* at 42-43 (citing Plaintiff's Exhibit 11). Moreover, Plaintiff testified that on April 11, 2012, he received a letter from the Commission of Corrections, in which it was determined that, following an investigation, "there is absolutely no evidence to support the allegations [.]" *Id.* at 43-44 (quoting Plaintiff's Exhibit 12). According to Plaintiff, once he completed his complaints to the Commission of Corrections and the Inspector General, they were placed in the mail and eventually received by these entities. *See id.* at 47-48.

On cross-examination, Plaintiff further elaborated that, as set forth in his complaint, he also sent a complaint to the DOCCS Inspector General on March 19, 2012 regarding the alleged assault. *See* Tr. at 44-45. Plaintiff claims that he drafted and sent these complaints once he received the necessary supplies and further acknowledged that, as of March 19, 2012 he had been provided these supplies. *See id.* at 45. When asked whether he filed a grievance regarding the March 9, 2012 assault, Plaintiff responded as follows:

> Ma'am, these visits here, assured me
> they was takin' care of the matter
> and it was under investigation, even
> the IG came to visit me, matter of

fact, and there was official, I don't
know what rank he was, he was in
a plain suit, he came to the cell ...
and assured me the matter was under
investigation and he was gonna take
care of it, but he never returned.

*Id.* at 45. Plaintiff further testified that he wrote to the
Commission of Corrections and the Inspector General's
Office because the assault against him was "criminal"
and these entities "have the power to investigate—they
have the law powers, investigating—by law to investigate
criminal matters[.]" *Id.* at 51-52.

**D. Application**

*1. "Prison Conditions"*
Both in his pre-hearing submission and during the
exhaustion hearing, Plaintiff argued that the allegations
in his complaint do not constitute "prison conditions"
and, therefore, the PLRA's exhaustion requirements are
inapplicable to the present matter. *See* Dkt. No. 85 at
1; *see also* Tr. at 58. Specifically, Plaintiff contends that
"compliance with the PLRA's exhaustion requirement
was unnecessary because his subjection to excessive force
during a transfer was not a 'prison condition' under 42
USCS 1997e(a)." Dkt. No. 85 at 1.

Contrary to Plaintiff's position, the exhaustion
requirements of the PLRA applied to his allegations in
the present matter. Plaintiff's reliance on *Gibson* and
*Neal* is misplaced. In *Neal*, the plaintiff brought claims
for inadequate medical treatment after he suffered a
lower back injury. *See Neal*, 267 F.3d at 118. The
plaintiff argued that because he alone suffered the alleged
misconduct on isolated occasions, his claim did not relate
to "prison conditions" and was therefore not subject to the
PLRA exhaustion requirement. *See id.* at 120. Although
the Second Circuit disagreed with the plaintiff and found
that his claim was subject to the PLRA's exhaustion
requirement because it related to "prison conditions,"
the court noted that the decision hinged on whether the
action was "properly classified as a single, momentary
matter ... [or one that] affect[s] everyone in the prison
community." *Id.* at 117. In *Porter v. Nussle*, 534 U.S.
516 (2002), the Supreme Court specifically rejected the
Second Circuit's interpretation of "prison conditions,"
and held that "the PLRA's exhaustion requirement applies
to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether
they allege excessive force or some other wrong." *Porter*,
534 U.S. at 532; *see also Curry v. Mazzuca*, No. 02 Civ.
4477, 2004 WL 2368013, *3 n.2 (S.D.N.Y. Oct. 22, 2004)
(noting that the portion of the *Neal* holding that "prison
conditions" within the meaning of the PLRA are only
"those aspects of prison life affecting the entire prison
population" was overruled by *Porter v. Nussle*, 534 U.S.
516, 532 (2002)). [3]

**\*6** As such, the Court finds that Plaintiff's allegations
unquestionably pertain to "prison conditions" as set forth
in *Porter* and, therefore, are subject to the exhaustion
requirements of the PLRA.

*2. Complaints to the Inspector General and Commission
of Corrections*
Plaintiff also argues that "compliance with the PLRA's
exhaustion requirement was unnecessary because he
grieved directly to the Inspector General's Office." Dkt.
No. 85 at 2. At the exhaustion hearing, Plaintiff's
counsel argued that it was Plaintiff's "understanding
that the Commission of Corrections investigated these
types of matters, as well as he submitted a complaint
to the Inspector General's Office and he had the same
understanding as regards to the Inspector General's
Office." Tr. at 58-59. [4]

First, to the extent that Plaintiff is arguing that he was
not required to comply with the PLRA's exhaustion
requirement because he "grieved directly to the Inspector
General's Office" and the Commission of Corrections,
the Court disagrees. Previously, courts in the Second
Circuit had held that " 'a letter to the Superintendent
who then commences an Inspector General investigation
can constitute 'special circumstances' that satisfy the
PLRA requirement that prison officials be afforded
time and opportunity to address prison complaints
internally.' " *Winfield v. Bishop*, No. 9:09-cv-1055, 2013
WL 4736378, *6 (N.D.N.Y. Sept. 3, 2013) (quotation
omitted). As discussed above, however, the Supreme
Court recently rejected the Second Circuit's "special
circumstances" exception to the PLRA's exhaustion
requirement. Therefore, Plaintiff's complaint to the
Inspector General's Office, which does not constitute
complete and proper exhaustion under New York's
grievance scheme, cannot excuse his failure to exhaust.

Even prior to *Ross*, the Second Circuit had held that a plaintiff's complaint to the Inspector General, which prompted an investigation, did not constitute a "special circumstance" justifying the plaintiff's failure to exhaust where it was clear from the subject matter of the plaintiff's complaint that the Inmate Grievance Procedure required him to pursue his claims before the CORC. *See Dabney v. Pegano*, 604 Fed. Appx. 1, 4 (2d Cir. 2015) (citation omitted); *see also Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (refusing to excuse an inmate's failure to exhaust notwithstanding the Inspector General's investigation of her claim). It was clear from the subject matter of Plaintiff's complaint that the IGP required him to pursue his claims before the CORC to fully exhaust his administrative remedies. *See id.*

The Court also finds that the testimony and evidence presented at the exhaustion hearing clearly established that the grievance process was available to Plaintiff and that he simply failed to avail himself of it. It was established at the hearing that Plaintiff was provided the necessary supplies to submit complaints to the Inspector General's Office and the Commission of Corrections. Although Plaintiff argues that he was not given a IGP complaint form, which are required to be available to inmates in the SHU, he does not claim that he requested one. Further, Mr. Hale testified (and the regulations clearly provide) that a grievance does not need to be submitted on the official form. *See* 7 N.Y.C.R.R. § 701.5(a)(1).

**\*7** Moreover, at the hearing, it was established that Plaintiff sent his complaints to the Inspector General and the Commission of Corrections on March 19 and 21. These complaints clearly demonstrate that Plaintiff was provided with the material and means necessary to submit a timely grievance with the IGRC by March 30, 2012. Even assuming such a grievance had been filed, dismissal is still required because the evidence further demonstrated that Plaintiff failed to appeal to the superintendent and then the CORC. *See Khudan v. Lee*, No. 12-cv-8147, 2016 WL 4735364, *4 (S.D.N.Y. Sept. 8, 2016) (citations omitted). Both Hale and Suprenant testified that a diligent search failed to produce any record of such a grievance or appeals.

Further, the Court finds that Plaintiff has failed establish that the IGP's grievance process was unavailable to him. Plaintiff failed to present any evidence or credible testimony demonstrating that the IGP was unavailable because (1) it operated as a simple dead end, (2) it was so opaque that it was, practically speaking, incapable of use, or (3) prison officials thwarted him from taking advantage of it. *See Ross*, 136 S. Ct. at 1859-60. Plaintiff has not alleged that he was thwarted from filing such a grievance by prison officials, nor could he since the evidence demonstrated that they assisted him in filing his complaints with the Inspector General and Commission of Corrections while he was confined in the SHU. As to the other two "scenarios" identified in *Ross*, Plaintiff has neither argued nor pointed to any admissible evidence that the IGP operated as a simple dead end or that it was "so opaque that it [became], practically speaking, incapable of use" and therefore "essential 'unknowable.' " *Ross*, 136 S. Ct. at 1859. Although the Second Circuit recently found that certain grievance procedures under the IGP met this latter standard, the court's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016). Specifically, the plaintiff in *Williams*, who was housed in a special housing unit and segregated from the regular prison population, gave his grievance complaint to a correction officer to file on his behalf. *See id.* at 119-22. However, the plaintiff alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 124, it reversed the district court's dismissal for failure to exhaust. Here, however, the regulations clearly provided that, even while housed in the SHU, Plaintiff was required to file a grievance with the IGRC, then appeal to the Superintendent, and then the CORC, all of which he failed to do. Given this unambiguous directive and the fact that Plaintiff's compliance was not in any way hindered by the actions of anyone else, Plaintiff has clearly failed to show that the IGP was "essentially unknowable." *Ross*, 136 S. Ct. at 1859.

Plaintiff was no stranger to the IGP and his unreasonable and mistaken belief that he did not need to file a grievance and appeal through the IGP does not excuse his failure to exhaust. *See Lewis v. Sheridan*, No. 9:12-cv-31, 2015 WL 1449163, *7 (N.D.N.Y. Mar. 30, 2015) (holding that "[i]t is well settled that simply complaining to [the facility superintendent, DOCCS Commissioner, and DOCCS Inspector General], without appealing any

of their responses to the CORC (which plaintiff in this case does not allege), is not sufficient to satisfy the PLRA's exhaustion requirement") (citations omitted). In light of the fact that none of the exceptional scenarios outlined by the Supreme Court in *Ross* apply, the Court finds that the administrative remedies were available to Plaintiff at Coxsackie C.F. Therefore, the Court grants Defendants' motion and dismisses this action.

### III. CONCLUSION

**\*8** After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss for failure to exhaust is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that pro bono trial counsel, Gennaro D. Calabrese, is relieved as pro bono counsel effective immediately;[5] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 61951

Footnotes

1    In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.' " *Id.* at 1862; *see also Williams*, 829 F.3d at 123 (recognizing that the framework set forth in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), setting forth a "special circumstances" exception to the PLRA's exhaustion requirement has been abrogated in part by *Ross*). As such, the Supreme Court specifically found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedy unavailable. *See id.* at 1858.

2    The Court notes that while Plaintiff testified that he did not receive these forms, he does not allege that he requested the forms and that his request was denied.

3    In *Gibson v. Goord*, 280 F.3d 221 (2d Cir. 2002), the Second Circuit relied on the same interpretation of "prison conditions" that was subsequently rejected in *Porter*.

4    The Court believes that counsel is possibly attempting to make two separate arguments here: (1) that filing complaints with either the Inspector General or the Commission of Corrections constitutes exhaustion for purposes of the PLRA and (2) that, even assuming these complaints do not constitute exhaustion, Plaintiff's belief that these were the appropriate entities with which to file his complaints constitutes "special circumstances" justifying his failure to properly exhaust.

5    The Court expresses its thanks to pro bono counsel for his dedicated and highly professional assistance.

**End of Document**                                        © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Arnett v. Shojaie, C.D.Cal., November 8, 2011

2010 WL 1235591

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry;
F. Englese; Sergeant Edwards; K.
Bump; and K.H. Smith, Defendants.

No. 9:03-CV-1010 (GTS/GHL).
|
March 31, 2010.

**Attorneys and Law Firms**

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy Mulvey, Esq., James Seaman, Esq., Assistant Attorneys General, of Counsel, Albany, NY, for Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on March 1, 2010, regarding the affirmative defense of seven employees of the New York State Department of Correctional Services-R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant Edwards, K. Bump, and K.H. Smith ("Defendants")-that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on August 14, 2003. At the hearing, documentary evidence was admitted, and testimony

was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial review." *Woodford,* 548 U .S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R.

§§ 701.5, 701.6(g), 701.7.[1] *First,* an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

**\*2** Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the

time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can-and must-be appealed to the next level, including CORC, to complete the grievance process.[4] There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.[5] After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative.[6] The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

**\*3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d 670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). [7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing, [8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim. [9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim, [10] (b) the inmate was specifically informed that the claim in question was grievable, [11] (c) the inmate separately

pursued the proper grievance process by filing a grievance with the IGRC, [12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion, [13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC. [14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim, [15] and/or (b) the inmate did not appeal his disciplinary hearing conviction. [16]

**\*4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, \*4 (S.D.N.Y. July 25, 2008). However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances." [17]

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court. [18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury. [19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law. [20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.) [21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also

on the several reasons articulated by Judge Richard A. Posner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied,* --- U.S. ----, 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury. [22]

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A. Availability of Administrative Remedies

**\*5** New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at \*4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587, 2007 WL 389003, at \*8 (E.D.N.Y. Jan.31, 2007) (internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would]

have deemed them available." *Hemphill,* 380 F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at \*8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [25]

### B. Estoppel

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to

exhaust administrative remedies based on the actions (or inactions) of other individuals. [26]

**C. Special Circumstances**

**\*6** There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at \*8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in

this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations, [27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order. [28]

**\*7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED* in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1235591

Footnotes

Murray v. Palmer, Not Reported in F.Supp.2d (2010)
Case 9:16-cv-00804-MAD-TWD    Document 24    Filed 07/13/17    Page 34 of 38
2010 WL 1235591

1    *See also White v. The State of New York,* 00-CV-3434, 2002 U . S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

2    The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

3    *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

4    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step.); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y. Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,* 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004)* ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

5    *Compare Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

6    *See, e.g., Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf. Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when

he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

7    The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

8    *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

9    *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia.* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

10   *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F. App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

11   *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2 (S.D.N.Y. Aug.30, 2007); *Reynoso,* 423 F.Supp.2d at 75-76.

12   *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

13   *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

14   *See, e.g., Benjamin v. Comm'r N.Y. State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question].."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

15  *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

16  *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary hearing decision ..., plaintiff did not do so here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

17  *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.' "); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa. Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

18  *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

19  *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326747, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

20  *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326747, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing

Murray v. Palmer, Not Reported in F.Supp.2d (2010)
Case 9:16-cv-00804-MAD-TWD    Document 24    Filed 07/13/17    Page 37 of 38
2010 WL 1235591

be held" before a judge, to resolve this issue); *Dukes v. S.H.U. C.O. John Doe # 1,* 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff's] grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff's] failure to appeal to the CORC"); *Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law." [internal quotation marks and citation omitted]; *Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

21  *See, e.g., Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), *accord, Mojias v. Johnson,* 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from *Snider v. Melindez,* and later stating that a district court could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v. Moriarty,* 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); *Pierre v. County of Broome,* 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); *Hill v. Chanalor,* 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); *Raines v. Pickman,* 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

22  *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir.2006); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003); *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 682-83 (4th Cir.2005); *Dillon v. Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

23  The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

24  In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restrains against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.; see also* Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance

2010 WL 1235591

Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

25  For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

26  *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided a ... 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004) ] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something plaintiff could have accomplished on his own.").

27  *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

28  The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days (i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the IGRC's failure to decide his grievance (i.e., by September 11, 2000). (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)

---

**End of Document**                                  © 2017 Thomson Reuters. No claim to original U.S. Government Works.